RASMUSSEN, RECEIVER, *v.* HELEN REALTY COMPANY.

[No. 13,515.   Filed November 22, 1929.   Rehearing denied February 7, 1930.   Transfer denied March 6, 1931.]

*U. S. Lesh* and *R. L. Lowther,* for appellant.
*Ewbank & Dowden,* for appellee.

ENLOE, J.—This action was brought by the appellant as receiver of the Indianapolis Amusement Company, against the Helen Realty Company, to recover a sum of money deposited by said amusement company with said realty company, agreeable to the provisions of a certain lease, to secure the performance of the covenants in said lease contract, in which contract the Helen Realty Company was lessor and said amusement company the lessee.

The complaint was in two paragraphs. The first paragraph was based upon the lease, a copy of which was attached to the complaint as an exhibit. It averred *full performance* on its part; that said lease had been terminated by the act of said realty company; and that the plaintiff was entitled to a return of the money so deposited. The second paragraph was for money had and received.

To this complaint, the appellee answered: (a) In general denial; (b) by a paragraph in which are set forth certain specific provisions of said lease, the breaches thereof by appellant, that it had retained said money, as it lawfully might, under the provisions of said lease, to save and protect it against damage sustained by reason of the breaking of said lease, the execution of another lease in December, 1921, leasing said premises to the Indianapolis Amusement Company for the period of 10 years from February 1, 1926, and pleading said lease and the provisons thereof, the failure of said amusement company to comply with the terms of said lease and the consequent damage to appellant as the result thereof, that said amusement company was insolvent, and that appellee, by reason of the facts pleaded, under the terms of said lease, was entitled to retain the money so placed in its hands; and (c) by a paragraph in counterclaim, for damages by it alleged to have been sustained consequent upon the breaching of said lease, and asking that it have judgment in its favor in the sum of $34,000.

These answers were met by a general denial, and by a reply of payment; this reply of payment was met by denial.

Upon request, the court found the facts specially and stated its conclusions of law thereon. From the judgment upon said conclusions, this appeal is prosecuted. The only alleged error presented is that the court erred in each conclusion of law stated.

The substance of the special findings, which are quite lengthy, may be stated as follows: The Indianapolis Amusement Company and Helen Realty Company are both corporations organized under the laws of this state; on February 23, 1927, William T. Rasmussen was, by the order and decree of the Marion Superior Court, Room 3, appointed receiver of said amusement company and at once duly qualified as such; since the year 1907, the Helen Realty Company has been the owner of a 99-year lease on the property at the southwest corner of New York and Illinois Streets in the city of Indianapolis, and prior to March 5, 1915, had constructed on said premises a building containing a hotel and store rooms, and also, at a cost of $80,000, erected on a part of said premises a theatre building, and, at a cost of $20,000, fully equipped said theatre, which was and is known as the "Colonial Theatre"; prior to April 1, 1915, the said realty company leased to said amusement company, for a term of 10 months, ending February 1, 1916, the said Colonial Theatre and all equipment thereof and said amusement company at once entered into possession of said property and began giving theatrical performances therein; March 5, 1915, said realty company and said amusement company, by their officers, signed a written contract of lease whereby said realty company leased to said amusement company, for the term of 10 years from February 1, 1916, the said theatre and its equipment.

The last above-mentioned lease is set out at length in

said findings, but we shall set out only those provisions which we deem necessary to the due consideration of the questions involved in this appeal. These provisions, in tenor and effect, are: The lease was to run for 10 years from and after February 1, 1916; the rental was to be $650 per month for the first year; it was to be $750 per month for the next year; it was to be $850 per month for the next three years, and it was to be $1,000 per month for the last five years; all rental was to be paid monthly, in advance; the lessee was to keep all exits, entrances and passageways then existing or that might thereafter be constructed, together with the interior and fixtures, furnishings, exterior walls, windows and roof in good repair and attractive in appearance, and as the various parts of said theatre and said building should become worn, soiled, or unsightly, lessee should redecorate, repaint and refinish the interior of said theatre and said passage-way, exits and entrances, as they should become soiled or unsightly, and should replace the curtains, carpets, draperies, seats and hangings so as to keep the interior and exterior of said building in such condition and state of repair as becomes and befits a first-class theatre for the conduct of dramatic, operatic, concert, vaudeville, motion picture, musical and stock performances, all so as to keep the premises in as good repair as they were in at the time of signing said lease.

It was also provided that the lessee should comply with all existing ordinances and all such ordinances as might thereafter, during the term of the lease, be enacted by the city of Indianapolis, and with the laws of the State of Indiana, regulating places of public amusement; that the payment of rent and of all other obligations of lessee under said lease should be without relief from valuation and appraisement laws, and with attorney's fees; that, on failure to pay the rent when due, or on failure to comply with any condition of said lease, the lessor, at its

option, might terminate said lease upon 10 days' notice, in writing, of such default, and might, by its representatives or assigns, enter upon and take possession of said premises, and that the failure of lessee to declare a default should not in any way estop it from declaring a subsequent default and taking possession of said premises; that, on failure to pay rent at maturity, double rent should be paid during such time as such rent should remain unpaid after the same became due; that the lessor should have the right, at its option, to discharge any obligation under the lease prejudicial to the lessor and that the amount so paid should be an obligation from the lessee to the lessor, payable at once; that, on or before December 1, 1915, the lessee should deposit with the lessor the sum of $6,000, as security for the payment of rent and for the performance of all covenants by lessee to be performed, said sum to be held as collateral security for the performance by lessee, and lessor was to pay interest on said deposit at five per cent per annum, payable at the end of each year, provided, that if there should be, at interest paying time, a default in the payment of rent, then such interest might, by lessor, be credited on rent so in default.

It was further provided in said lease that duplicate copies of said lease should be deposited in escrow with one Louis Newberger, and that the named lessee should have the option of accepting said lease, to be exercised on or before December 1, 1915, by notifying, in writing, the named lessor, of such acceptance and by depositing with lessor the $6,000 before mentioned, and, upon such acceptance, said Newberger was to deliver to lessee one of the copies of said lease so deposited with him.

It was further found that, on November 27, 1915, the said parties, in writing, entered into a supplemental agreement, in modification of the original lease, which supplemental agreement was, in substance, as follows:

That, in consideration of the mutual benefits that would accrue to the parties to said lease, and in consideration of a personal guaranty by one Charles B. Sommers, that, in the event the lessor should elect to declare a forfeiture thereof and to terminate said lease, then said sum of $6,000, deposit aforementioned, or any balance thereof remaining in lessor's hands, should be forfeited to and be retained by lessor to cover the special damage which would be sustained by lessor, by reason of the breach of said contract by said lessee, it being agreed by the parties that, if said lease was broken by lessee, lessor would, by reason thereof, sustain special damage, but that such forfeiture to lessor should not release lessee from paying all rent which might accrue up to the time lessor repossessed itself of said premises. The said amusement company, November 29, 1915, duly notified said realty company of its election to take said lease and that it would deposit with said realty company the $6,000 therein specified, which said deposit it made December 1, 1915, and, on the same day, each of said parties received from said Newberger, trustee, a copy of said lease theretofore deposited with said trustee, in escrow, as hereinbefore stated.

It was also found that, contiguous to said theatre building, was a building with business rooms, occupied by tenants of the Helen Realty Company, and that, in said business rooms, there were then being operated a restaurant, a cafe, a drugstore, cigar, confectionery, pool and billiard business, and that, by doors leading into the lobby of said theatre, the plan of said building was such as to render it available to the patrons of said hotel, theatre and other business, ready access to and from the different parts of said building, which helped to promote an interchange of patronage as to the business carried on by the several tenants.

It was also found that the said amusement company,

after said lease of March 5, 1915 had become effective and, after said amusement company had possession of said property leased thereunder, and while said lease was in full force and effect, said amusement company became and was delinquent in the payment of rental due, to an amount in excess of $6,000; that December 1, 1921, said parties entered into another lease of said property, covering the period from February 1, 1926, to February, 1936, under which said lease said amusement company agreed to pay rental for said premises as follows; The sum of $1,500 per month, payable on the first day of each month, in advance, during the first five years, and the sum of $1,750 per month, payable on the first day of each month, in advance, during the second five years covered by said lease; that, concurrently with the execution of said lease, it would deposit with the lessor the sum of $6,000, and that thereafter it would deposit with the lessor, on the first day of each month, for 12 months, the sum of $200, and, on the first day of each month, for the next 12 months, it would deposit the sum of $300, until a sum total of $12,000 had been deposited, which, with the $6,000 then already on deposit, would make the sum of $18,000, which should be held by lessor as collateral security for the performance by lessee of its obligations under said lease of March 5, 1915, and for the performance by lessee of the terms and conditions of said lease of December 1, 1921, it being stipulated in said lease as follows: "That if at any time the lessee should make default of any installments of rent reserved under said lease of March 5, 1915, or in the payment of any other sums therein agreed to be paid by it, or if the lessee and guarantors herein, or either of them, should make default in the payment of any installment of rent reserved in this lease, or in the payment of any other sums herein agreed to be paid by them, or in the performance of any of the obligations of this lease, and if any

such default under either of said leases should continue for a period of thirty days, then the lessor shall have the right and it may, of its own option, without notice or demand, apply all or any part of said sum in the payment of rents or other sums so in default, and, upon notice that such application has been made, lessee and guarantors agree that, within five days thereafter, they will deposit with the lessor additional money sufficient to restore said security deposit to its original amount of $18,000, it being the intent hereof that the lessee and guarantors shall, at all times hereafter until the expiration of this lease, keep on deposit with the lessor, for the purpose aforesaid, a sum not less than $18,000.''

It was further provided in said lease: ''That, in the event the lessor elects to and does forfeit and terminate either of said leases at any time hereafter for the default of the lessee, as provided in clause 14 of said lease of March 5, 1915, or in clause 20, of this lease, then said money so held on deposit by the lessor, or any balance thereof then remaining in lessor's hands, shall be forfeited to and be retained by the lessor to cover the special damage that the parties hereby agree will be sustained by the lessor in the event lessee and guarantors should fail to keep and perform either of said leases, or any term thereof on their part, but this shall not be understood to release said lessee and guarantors from paying any and all rents that may have accrued under the terms of either of said leases, up to the time lessor obtains possession of said premises.'' It was also provided that the lessor should have the right at all times, upon reasonable notice to lessees, to pay and discharge any obligations of the lessee in any way prejudicing the lessor, and that the amount so paid, including any expense incurred in connection therewith, should be an additional obligation from lessee to lessor and payable forthwith, and the same provisions as to keeping said building, exits, doors,

windows, curtains, furnishings, etc., in repair and clean, that were contained in the lease of March 5, 1915, were incorporated in said lease of December 1, 1921.

It was also found that said lessee continued in possession of said premises until February 23, 1927, on which date, the appellant herein was appointed receiver of said lessee; that said receiver at once took possession of said premises and continued to operate said theatre until about March 7, 1927, on which date he notified appellee, the lessor, that he would not assume said lease, and that he abandoned said premises, and that lessor could take charge of the same.

It was also found that the rent for the month of September, 1926, in the sum of $1,500, was not paid when due; that the rent for the month of October, 1926, in the sum of $1,500, was not paid when due; that the rent for the month of November, 1926, in the sum of $1,500, was not paid when due; that the rent for the month of December, 1926, in the sum of $1,500, was not paid when due; that the rent for the month of January, 1927, in the sum of $1,500, was not paid when due; that the rent for the month of February, 1927, in the amount of $1,500, was not paid when due; that as to the rentals due covering the said months of September, October, November and December, promissory notes were severally given, for the said monthly rental, under an express agreement that, by accepting said notes, the said lessor did not waive any of its rights under the terms and conditions of said lease; that, on February 16, 1927, said amusement company borrowed from said lessor the sum of $2,000, and executed to said lessor its promissory note for said amount, and also, as part of said note, executed a pledge agreement, whereby it pledged to said lessor said deposit of $18,000,—"to secure the payment of this note, and of any other liability or liabilities of the undersigned to the holder hereof, due or to become due, or

that may be hereafter contracted or existing, howsoever acquired by the holder."

It was further found that on March 16, 1927, the lessor, in writing, notified the Indianapolis Amusement Company that, on account of its failure to pay rental according to the terms of said lease, and because of the appointment of a receiver for said amusement company, it had elected to declare a forfeiture of said company's rights under said lease, and that, thereafter, by its agent, it executed a lease to the Capitol Amusement Company on said premises for a term which covered the unexpired term of said Indianapolis Amusement Company but at a loss in rentals, and to the damage of appellee herein in the sum of $20,750. It was also found that said Indianapolis Amusement Company had failed to keep and comply with its covenant to keep said building and its furnishings in good repair and condition and that, to place said premises and said furnishings in the condition in which they were agreed to be kept, cost the said lessor the sum of $3,171.30, and that it was damaged to that amount on account of said breach; that, in procuring a new tenant for said premises, consequent upon default of said Indianapolis Amusement Company, lessor was required to and did use the services of a real estate agent and broker, and that, by reason of said breach, it was damaged $500 in this behalf; that, consequent upon said breach, said lessor was required to and did employ attorneys to look after its said matters, and, after the matter of drawing a lease between it and its aforementioned new tenant, and that reasonable compensation for the services of said attorneys was $400, and that lessor had, as a consequence of said breach, been damaged in that amount.

It was further found that appellee had paid to said Indianapolis Amusement Company, according to the terms of said lease, all money due as interest on said

deposit, up to and including January 1, 1927; that the damages consequent upon a breach of said lease were not measurable by any pecuniary standard, and that the amount so deposited was not greatly disproportionate to the loss and damage which might be sustained by said lessor, consequent upon a breach of said lease by said lessee; and that a demand for said deposit had been made by appellant prior to the bringing of this suit.

Upon these findings, the court stated as its conclusions of law: (a) That the plaintiff was not entitled to recover anything in this action; (b) that defendant was entitled to retain the $18,000 in its hands as liquidated damages, consequent upon the breach of said lease; (c) that said $18,000 was to be regarded as liquidated damages and not as a penalty.

As before noted, the first paragraph of complaint was based upon the provisions of said lease as to the return of the money so placed and held on deposit, and the appellant, alleging that said lessee "had performed all of the covenants and obligations on it enjoined under the terms of said lease," sought the return of said money to him, as receiver, as such return was provided for in said lease.

On the trial the court specifically found that said lessee had not kept and performed the covenants of said lease, but had breached the same in divers named particulars, and it, therefore, follows, there being no element of waiver in this case, that the plaintiff was not entitled to recover upon the first paragraph of his complaint. Where the facts are as in this case, it is fundamental that a party cannot claim the benefit of a contract which he has himself breached.

The second paragraph of complaint was for "money had and received," for money which, though it was in the hands of appellee, in equity and good conscience it

had no right to retain. We shall look to the findings to see how the parties stand as to this proposition.

Reducing the findings of the court to specific figures, we find the following:

Due on account of rent unpaid . . . . . . . . $ 8,625.65
Due on account of money borrowed . . . . 2,100.00
Due on account of repairs made . . . . . . . 3,171.30
Due on account of diminished rental . . . . 20,750.00

Making a total of . . . . . . . . . . . . . . . $34,646.95

due appellee, under the terms of said leases and said pledge contract, at the time of the trial. In the above computation, we have excluded all attorney's fees and realtor's fees for negotiating lease.

As before noted as found by the court, when the loan of $2,000 was negotiated in February, 1927, there was a special agreement made as to this deposit. It was then expressly agreed that said deposit should stand as a pledge to secure the payment, not only of the note then executed, but also "any other liability or liabilities of the undersigned to the holder hereof, due or to become due, or that may be hereafter contracted or existing, howsoever acquired by said holder." In view of this express stipulation—and this was the last agreement of said parties relating to said deposit—we hold that said deposit was held as a pledge to secure the payment of each and all of the above noted items of indebtedness. We further hold that the first conclusion of law, as stated, was broad enough to cover the issues made by the complaint and the answers thereto, and we may, therefore, disregard said second and third conclusions as being unnecessary.

Appellee has moved to dismiss this appeal, and while the judgment rendered herein is very informal, yet we think it sufficient to bind the parties, and the motion to dismiss is therefore denied.

Affirmed.